Our next case for today is 2019-1163, Pharma Tech Solutions v. LifeScan. May it please the court, John Schaefer on behalf of Pharma Tech and Decision Diagnostics. This case suggests a new norm for a prosecution history estoppel, both argument-based and amendment-based. With respect to amendment-based estoppel, the proposition is that if a limitation added by amendment is already found in the prior art to be overcome, then one knowledgeable in the art would know that the reason why the entire amendment overcame the prior art, its rationale, is only tangentially related to the equivalent of the added limitation that is contained in the prior art. Because the reason for adding a limitation was not motivated in that instance. Adding that limitation was not motivated by any patentability concerns. With respect to argument-based estoppel, you have the same thing. So why do you argue the multiple measurements limitation? Why do you argue it was added then? It's not the multiple measurements limitation. The limitation that we're arguing exists in the prior art is the converting limitation. There were three pieces to the amendment that's at issue. There was taking multiple measurements at different times, there was converting, and then there was comparing those measurements against each other. The one that's at issue here that the doctrine of equivalence would apply to is only the converting limitation. Because there's no dispute that the accused device... Okay, so why was... your argument basically is we should assume it wasn't added for patentability purposes. Because, if I understand your argument, we should assume it wasn't added for patentability purposes because the problem had already been overcome in the prior art, so therefore it must have been added for some other reason. What was the other reason? No, the reason converting was added is that in order for an electric current to disclose an analyte or to represent an analyte, to be proportional to an analyte, you have to convert it. Electro-biosensors exist because we know there's a known correlation between electric currents generated and an analyte. So converting is a necessary underlying element to any electrical chemical biosensor. And both the Zabinski prior art reference that was cited in connection with the amendments, prior to the amendments, and the White reference, they both specifically disclose converting. In fact, White itself talks about converting electrical currents and then summing those together and comparing them with an expected. So the whole idea of converting was known in the art. So you can't overcome it. It's obvious you can't overcome a prior art reference by citing something in that reference. You have to cite something new, different, or unique, and converting was in there. I guess I still don't understand. Why was the limitation added then? The limitation was added because in order to compare. What you have is you have a diffusion limited reaction here. And over time, you can't simply compare them because a measurement, a current measured at one time, at time A, and a current measured at time B, you're not going to know whether or not those are pointing to the same analyte reference unless you do the conversion. Because the diffusion limited will show you that as time passes at the initial phase of the Cottrell current. It sounds like you still thought it was important, an important thing that had to be in the claim, even with your explanation that you're black. It's important because if you want to be able to compare measurements throughout the entire reaction period, you have to convert. But what the accused device does that's interesting is at the end of that reaction, there is no real difference anymore between the current being measured and the glucose measured in time. Let me just tell you one of the problems I'm having with your argument. I'd like you to point me to evidence in the record, specifically in the prosecution history, that would objectively support what you're saying here. Because objectively, when you look at the prosecution history, it looks like this was purposefully added to the claims. But not to overcome the prior art. Show me how the prosecution history shows that this was added not to overcome the prior art. Well, if you look at page 66 of our blue brief, which is the opening brief, I'm showing you... Okay, so you're going to show me references to the appendix that are in your blue brief. Exactly. What I'm showing you is a reference to white. And the graphic in white, where white specifically takes multiple glucose concentration measurements and compares them against an expected. So by us adding a converting limitation to our... adding that limitation as an amendment, it could not have overcome the prior art. Can we look at page 307 and 308 of the appendix? Yes. Because your patentee argued in remarks, I think, that it in fact overcome Pullman. What am I missing? Because Pullman ultimately converts as well. You have Pullman and you have... Pullman likewise does not suggest the present claimed means for comparing the concentration derived from the first measurement and at least one additional concentration derived from an additional measurement to verify the results. All claims now pending have been amended to include this additional feature. You're absolutely right. But the distinction in Pullman and Kohn and Zeminski is they were not taking multiple measurements over time and comparing them to determine whether or not there's an error. And the only way you can do that throughout the entire reaction period is to convert. If you want to do it... if you just want to compare the currents... because if you compare currents at an earlier period of time, those currents are going to be different. But you're not going to know if that difference is the result of the reaction or is the result that you're getting different analyte measurements. So you're absolutely right. Yes. Counselor, so you added the comparing limitation in order to create a real-time comparison. A real-time comparison of measurements against each other. The Comcast device does not have a real-time comparison. And that's why you added this limitation, correct? The prior art did not compare measurements with each other. The only reference cited in the prosecution... But they didn't have real-time comparison, and that's why you amended your claim. You're almost correct, Adriaan. The distinction is the prior art, in particular white, took multiple measurements at different times but used those measurements and compared them against an expected Cottrell curve. So they weren't comparing the measurements with each other. They were comparing them with an expected. And they do that both with currents in white, and they do that with glucose measurements. They look at glucose measurements over different times, and they compare them against an expected. And what we're saying here is, no, we're different. We compare with each other. But in order to compare with each other, and this goes to Judge Stoll's point... Not just compare with each other, we compare in real time. We compare in real time. And that's what you were seeking to achieve through your amendment. Comparing against each other in real time. No one else does that. And the Comcast device does not compare in real time. The LifeScan device compares in real time. What LifeScan is saying is, we compare currents, not glucose concentrations. And the reality is, those aren't the equivalent with each other until you get to the end. You cannot compare currents with each other during the early portion of the reaction because you're not going to know if your difference is due to time or due to differences in analyte. So you're absolutely right. Yes. Can I ask you a separate question? Which is, on page A398 of the appendix, this is with respect to walling. And here, you make the argument, those teaching in walling will utilize multiple measurements together to determine a proper analyte concentration. That operation in walling does not convert two different controlled current readings to first and second analyte concentration measurements. And then compare the first and second analyte concentration measurements to each other. Why isn't this showing that you expressly distinguished walling based on this very limitation that you're saying you didn't add for purposes of distinguishing the primary? Because walling takes multiple measurements and then gets a single measurement. It never compares measurements at different times. Walling converts. Walling absolutely has to convert those current measurements to get an analyte reading. What the patient wants to know is, what is their glucose level? They don't want to know what current was generated. I don't understand. At that page, 398, what you said was, the operation in walling does not convert two different controlled current readings. So what am I missing? You have to read the whole sentence. Because if you read the whole sentence and compare them with each other, and the only way you could compare them with each other is to convert. And if you looked at the patent in suit, claim four, the way that claim is written is, you get two, you take a current reading at time one, you take a current reading at time two, you then convert and you compare. So the equivalent we're talking about here is converting. And in order to be able to compare measurements taken at different times with each other, you need to, I see I've gone over my time because I need to save something for rebuttal. Does the accused product compare concentration measurements derived from a first measurement and at least one additional concentration derived from an additional measurement to verify the results? The accused product compares currents but at a time when there is no distinction between currents at time and glucose measurements at time. So it's the equivalent. Okay. All right. We'll save the remainder of your time for rebuttal. Tell me how to say your last name. Good morning, Your Honor. We submit that this is a textbook case for prosecution history estoppel. There's no literal infringement in this case because life scan system does not meet two limitations that were added to the claim by amendment for reasons of patentability. The limitations require converting separate current measurements to separate concentration measurements and then comparing those separate concentration measurements. Life scan system does not do any of that. Life scan system compares current rather than concentrations. If the two current measurements are sufficiently close to each other, it then creates a single concentration measurement, which is not compared to any other concentration measurement. So there's no literal infringement. Pharmatech recognized that when it stipulated to dismiss its claims of literal infringement with prejudice. Pharmatech initially had disclaimed any intention to rely on the doctrine of equivalence, but after stipulating to dismiss its claims of literal infringement, then resurrected the doctrine of equivalence claim. The district court was correct in dismissing that claim on summary judgment and concluding that any doctrine of equivalence claim is flawed by prejudice. What's your response to some of the positions taken here today about there being a distinction somehow because I'm not even sure if I can explain it properly, but there being a distinction how these statements about Walling, for example, are not relevant because we really should be focusing on the second clause that Walling doesn't convert two current readings and then compare the first and second analyte concentration measurements. What's your response to that? I think it's just a total misreading of what the applicants are telling the public. Your Honor asked opposing counsel about pages 398 to 399. The applicants are distinguishing the prior art there, and more importantly, they're telling the public what their present invention is, and they're saying loud and clear that their present invention is a system that converts two current measurements into concentration and then compares concentration, compares those two concentration measurements derived from the current measurements. That's what the invention is. They distinguish art that doesn't do both of those things, and that distinction is equally applicable to a life-scan system which does neither of them. So the reason for the – they're explaining what the reason for the amendment is, and that reason to define their present invention and distinguish the prior art is equally applicable to life-scan system. It's interesting, Your Honor, if you look at what preceded the interchange of 398 and 399, at page 384 of the appendix, there's a discussion of white. And white – Pharmatech had tried to distinguish white in response to an earlier rejection by arguing that white is different from the present invention because white uses a complicated mathematical ratio, and that complicated mathematical ratio is different from the straightforward system that Pharmatech's invention uses, that the applicant's invention uses. And at page 384, the examiner considered that argument and said it's unpersuasive. And the examiner then goes on to say that while white compares readings using this mathematical ratio, white nevertheless compares the current readings to determine whether it's proper. So the examiner is saying that white compares current. The applicants respond to that at 398 and 399 by saying that white is completely different from their invention because the present invention compares concentration rather than current. That's – you're pointing to, like, the fifth line from the bottom on page 398. The whole last paragraph. The whole – I see. Continuing over to 399. And, in fact, if you look at page 398, if you look at the argument, the applicant's argument starting at the bottom of page – the last line on 397 and then continuing over to the middle of 399, in those two pages, the applicants 12 times tell the public that their present invention is a system that compares – that converts current to concentration and then compares the actual concentration measurements. They do that 12 – 8 – 12 – excuse me – 8 times in two pages. If you look at page 378 and 379, they do that four times in two pages. And those statements are telling the public in the clearest possible terms that this invention is a system that converts current – separate current measurements to separate concentration measurements and then compares the separate concentration measurements. They're telling the public what the invention is, and they're telling the public what the invention is not. Yeah, but your – that argument is almost like saying there is no tangentiality exception. I mean, the tangentiality exception presupposes that the sentence would otherwise be an estoppel. I beg to differ with that, Your Honor, and what makes this different – What case would you point me to that says that's not the case? What I'd point you to, Your Honor, is that the statements that we're talking about at 378 and 379 and 398 and 399 make this case the polar opposite of the case that this court decided in August in Eli Lilly. In Eli Lilly, what the court did is look to see what the present invention was, and it found that the invention did not exclude the accused device. Here you have a statement that the limitations added by amendment aren't just distinctions. They are actually defining the present invention, and that's very, very different. And what it does, Your Honor, it makes this a stronger case for prosecution history estoppel than any other case that this court has ever considered. I'm not aware of any case where an applicant amended his claims and then specifically pointed to the language of the amendment to say the language that I've added by amendment, that's my invention, and that's exactly what the applicants did here. It's extremely unusual for an applicant to add limitations and then say what I've added is my invention. And having said that to the public, I don't think the applicants can then escape what they're telling the public without doing notice to the public notice function of the prosecution history. The public's entitled to rely on what the applicants are telling the public in the prosecution when they say my invention is a system that does this. When you tell the public my invention is a system that converts separate currents into concentrations and then compares the separate concentrations, after you tell the public that, you then can't turn around and try to recapture through equivalence what you've disclaimed. And this case is on all floors. The clearest case would be Judge Dyke's decision in Pods where the applicants repeatedly said my invention is a rectangular structure. And if the structure is not rectangular, then it's not my invention. And then the applicants tried to turn around and assert their claim against a non-rectangular structure. And this court said, no, you can't do that. You've told the public that your invention is a rectangular structure. You can't then turn around and assert your claims against a U-shaped structure. And that's exactly what they're trying to do here. They say loud and clear that their invention is a system that converts current to concentration and then compares concentration. After telling that, the public's entitled to rely on that. And they then can't turn around and seek to reclaim what they've disclaimed. I think that's the real essence of what we have here. And that is what they're trying to do, I think. These statements at 398 and 399 in particular tell the public loud and clear what the rationale for the invention is. The rationale is to tell the public what the applicants actually invented, a system that compares, that converts two separate currents to two separate concentrations and then compares the concentrations. And to distinguish references that don't do that, references like White and like Lifescan System that compare current rather than concentration. And for the same reasons, again, as in Pods, those same statements create an argument-based estoppel that bar the applicants from seeking to recapture what they surrendered during prosecution. I'm happy to answer any other questions that the court may have, but otherwise we'll rest on what we have in our papers. Okay. Thank you, counsel. Mr. Schaffer, you helped us a little time. Yes, ma'am. I noticed that Lifescan didn't respond to the basic premise of this argument here, which is the converting element is in Szymanski and in White. Counsel misspoke when he said White compared currents with each other. It doesn't. White takes multiple currents at different times and compares them with an expected. White also takes multiple current measurements, converts them to glucose measurements, and compares them to an accepted. It doesn't matter what the public thinks when they read this. It matters what a person of ordinary skill in the art would think. And everyone in the art knows you must convert. The converting element, when you look at the chart, is a necessary element to be able to compare measurements over time. So it had to be in there. It had to be added, but it did not need to be added for the reasons why the tangential exception doesn't apply. It was not added to overcome the prior art because it could not overcome the prior art because that limitation was specifically in the prior art. Just to be clear, when you say everyone in the prior art knows you have to convert first, is that something that's in the record or is that a turning argument? If anything, it's how electrochemical biosensors work. According to you. My question was, is it in the record somewhere that everyone in the art knows this is the first step that has to occur? What I would look at is in our conversion element, when we added the conversion element, the prosecute... You purported to make a statement about what a skilled artisan would know, and I'm asking, is there record support for that? Yes, and what I would refer to is, if you look at Appendix 339, in response to the amendment, the examiner repeatedly says, it compares currents. Because the examiner knows that the conversion element, that no one ever cited the conversion element... So the examiners say it compares currents, I'm supposed to subsume for that that that is record evidence to support your statement that every skilled artisan knows you have to convert. And I would look at the prior art because every single one of the prior art references converts. Because in order to get an analyte measurement out of a current measurement, you have to convert. So you can look at Pullman, you can look at Kohn, you can look at Zeminski at 331, where we specifically say Zeminski converts. It says specifically on 331. Zeminski states only that the device measures current at specific time points during the Cottrell current decay, and then those current values are used to calculate the analyte concentration, i.e. convert. Zeminski converted. So there is no possible way. So, Your Honor, there's two ways we're looking at this. One is, was it just a normal, unknown feature? And I'd refer Your Honors to your SRI opinion, which we cite in our brief, which says, look, if the element was in the prior art, then it can't happen. It was a known existing feature in the art. Counselor, what was not in the prior art was a real-time comparison. And you left me unsatisfied with the answers when I was asking you about this. The claim was amended in order to enable this safety check type feature, correct? Yes. And what made the patent now different from the prior art was that you had a real-time comparison. Absolutely. We had a real-time comparison of two measurements made at different times. Okay. So that allowed you, that gave you some certainty that the measurement you got was right. And you need to address this. So now you disavow everything except for the real-time comparison. Exactly. The real-time comparison is the inventive element. And while I understand, I think I've gone over my time, while I understand you have to look at each element, our argument is very simple. If the element added was added for reasons unrelated because it was already in the prior art, it cannot, the equivalent of that cannot be anything but tangential. Thank you. Okay. I thank both counsel. The case is taken under submission.